## Kentucky Seminary vs. Wallace.

### APPEAL FROM CHRISTIAN CIRCUIT.

1. A variation from the precise name of a corporation, when the true name can be collected from the instrument, or is shown by proper averments, will not vitiate a grant by a corporation. (2 *Ken. Com.* 92; *Pendleton vs. Bank of Kentucky*, 1 *Monroe*, 177; analogous is 3 *Pick.* 232; *Angel & Ames on Corp.* 55; *Bacon's Ab. Tit. Corp.* 5.

2. The corporate name in this case was *Kentucky Seminary;* the deed was made by the name of *Kentucky Academy*, executed by the President of the *Kentucky Seminary*, with the seal of the corporation, when there was no such corporation existing in Kentucky as the Kentucky Academy. Held—that the deed was properly admitted to go to the jury to show title in the grantee, and that the corporation had power to sell. Seminary and Academy are generally regarded as synonymous.

3. Where the attorney of a party is notified to attend to take depositions, and does attend, and the deposition is not taken, without good reason for the failure, the party failing is subject to the judgment for mileage, &c., though the client of the attorney, or one of them, resided at the place of taking the deposition.

Case stated.

In virtue of the 3d section of an act of the Legislature of Kentucky, passed on the 22d of December, 1798, the Justices of the Franklin County Court, in the year 1799, caused to be surveyed 6,000 acres of land south of Green river, for seminary purposes.

By an act passed on the 17th of December, 1800, (2 *Litt. Laws of Ky.* 388,) these lands became vested in a corporation designated as the "Kentucky Seminary," to be held by them forever, for the endowment of said' seminary. By the 6th section of this act the trustees were prohibited from alienating any of the land for a longer period than seven years, and that by the concurrence of two-thirds of the trustees.

By an amendment to the above act, passed in 1802, (3 *Litt. Laws of Ky.* 1,) the trustees were authorized to sell absolutely one-eighth of the land.

By an act of the 6th January, 1812, new trustees were appointed, (4 *Litt. Laws of Ky.* 319,) and by another act passed on the 26th January, 1814, (5 *Litt. Laws of Ky.* 163,) the trustees of the seminaries of learning in the several counties of the Commonwealth of Kentucky were authorized to sell all the lands with which they had respectively been endowed by the Legislature, and vest the proceeds in stock of the Bank of Kentucky, and make report of their sales, &c., to the county courts, to be recorded.

In 1832 a deed of conveyance was made, purporting to be by "the trustees of the Kentucky Academy," to Fidello C. Sharp, for a boundary of land, without specifying quantity, "being part of a survey of 1500 acres made for the County Court of Franklin, Nov. 22, 1799." The conveyance purports to convey all the title which said trustees possessed, with special warranty. It concludes in these words:

Ky. Seminary
vs.
Wallace.

"In testimony whereof, the said trustees of the Kentucky Academy, have hereto, by their chairman, John H. Hanna, set their hand." The deed was acknowledged by said John H. Hanna, as chairman of the Kentucky Academy, before the clerk of the Franklin County Court, and upon his certificate, recorded in the Christian County Court.

In 1851 the trustees of the Kentucky Seminary instituted an action of ejectment against the appellee to recover possession of about 750 acres, part of a survey of 1500 acres which had been surveyed for the Franklin County Court, and by the act, above referred to, passed in 1800, vested in the Kentucky Seminary.

The proof shows that the appellee was in possession of the land at the date of the service of the declaration in ejectment, and the defense relied upon is that the appellants have no title to the land sued for. On the trial in the Circuit Court, the appellee offered to read to the jury the deed of 1832, signed by John H. Hanna, as Chairman of the Board of Trustees, &c.; also the deposition of Charles S. Morehead, who deposed that he wrote the deed, and that he made a mistake in describing the grantors as trustees of the "Kentucky Academy" instead of "Kentucky Seminary." This deed and deposition were objected to by appellants, but the objection overruled. The jury found a verdict for the appellee. A new trial was moved for, but the motion overruled and judgment in bar rendered. The plaintiffs below have appealed to this court.

*M. Mayes*, for appellants—

The main, and perhaps the only question necessary for this court to decide, is whether the Circuit Court erred in permitting a deed and deposition to be read to the jury as evidence in behalf of the appellee. It is believed by the counsel for appellants that both these papers should have been rejected.

KY. SEMINARY
*vs.*
WALLACE.

There were two institutions chartered by the Legislature, the one the "Kentucky Seminary," the other the "Kentucky Academy." Six thousand acres of land was given to each. At the chartering of the Kentucky Seminary, no power was given to the trustees to make sale of any portion of the land granted, but was expressly prohibited, (2 *Litt. Laws, of Ky.* 389–90.) A subsequent Legislature authorized the trustees to sell a portion of the lands, with restrictions, (2 *Litt. Laws of Ky.* 419;) and subsequently authorized the sale of the remainder of their lands under the direction of the Circuit Court, (4 *Litt. Laws of Ky.* 352;) and in 1815 the Legislature authorized the trustees to sell their lands and vest the proceeds in bank stock. (5 *Litt. Laws of Ky.* 163.) By neither of said acts, nor by any subsequent act, were the trustees authorized to create an attorney and empower him to sell and convey their lands. The trust was imposed on trustees by the Legislature because of the confidence had in them; and if it had been intended that that power should be transferred to an agent, it would have been expressly given. Charters are to be strictly construed. (*Angel & Ames on Corp.* 256–7; 1 *Kinne's Law Comp.* 275–278; 2 *Kent's Com.* 269.) The deed from C. S. Morehead, as attorney in fact for appellants, is void, and should have been rejected.

It is also contended that the deed from the Franklin Academy to F. C. Sharp, should have been rejected—the Kentucky Academy and Kentucky Seminary being distinct institutions. The description of the parties is equally important as the description of the thing granted. (2 *Black.* 298.) The general rule is that a deposition cannot be read in a suit at law to correct a mistake in a description of a party to a grant. Parol evidence cannot be adduced to vary or contradict a written instrument. The exception is to cases of fraud or mistake; but to reach such cases a suit in equity is the appropriate mode in which the chancellor is called upon to correct the mistake. (1

Ky. Seminary
vs.
Wallace.

*Greenleaf Ev.* 275–296.) The court erred therefore in permitting the deed and deposition to go before the jury, and in refusing the new trial, and there should be a reversal.

*E. Wooldridge,* on the same side—

The Kentucky Academy and Kentucky Seminary are two distinct corporations. There is no ambiguity on the face of the deed. Both institutions are chartered corporations. There is no ambiguity raised which requires explanation, and it is insisted that parol testimony is inadmissible to prove that the deed was intended to be the deed of the trustees of Kentucky Seminary, when on its face it is the deed of the Kentucky Academy. If this may be done in a court of law, the deed of John Brown may be proved to be the deed of John Smith. No authority in law books or dictionaries can be found to prove that academy and seminary are synonymous terms. They are different in their origin, derivation, and meaning. An academy is a society of persons formed for any purpose. Originally they had no connection with letters. The academic groves were places where the people of Greece assembled for all purposes; and because there Plato first taught the doctrine that matter is eternal and infinite, and that there is an intelligent cause, the author of spiritual being and the material world, were his teachings styled the "academic philosophy of Greece"—since which, in modern times, the word academy is used to designate any place or society of persons formed for religious teaching; whilst the original meaning of seminary, is the place or original stock whence anything is produced—in modern times a place of education where any or all branches of learning are taught. There are very few derivative words synonymous, and it will be difficult to find two differing more widely in the original than *academy* and *seminary.*

A court of equity alone could correct the error, if any in fact exists in respect to the name of the grantor in the deed in question.

The strongest case on this subject is that of *Lord Say & Seal* 10 *Mod.* 10. There it was apparent on the face of the deed that Lord Say & Seal was intended to be the grantor, though in the granting part of the deed his name was omitted; he however signed and sealed the deed, and the court said from the whole contents of the deed it was manifest that it was intended that he should be the grantor, and therefore so treated the deed, and held it sufficient to pass the title. The case is not analogous to this; here there is no such difficulty. The name of the grantor is plainly inserted. But it is asked to reject that name and supply another on the authority of parol proof of mistake in the draftsman. (See the case of *Mill vs. Hill*, 22 *English Law and Eq. Rep.* 20.) The deed should have been rejected. A reversal is prayed.

*James Harlan*, on the same side—

The first question presented for the decision of this court is as to the admissibility of parol evidence, to correct an alleged mistake in the name of the grantor in a deed of conveyance of land. It is regarded as wholly immaterial whether there now is or ever was a corporation in this State by the name of the "Trustees of the Kentucky Academy;" but, in fact, such a corporation was created by an act of the Legislature, on the 12th December, 1794, (1 *Litt. L. Ky.* 228,) and to have perpetual succession.

If the party holding the conveyance has the right to correct the mistake, it is not in a court of law, in the trial of an action of ejectment; but the jurisdiction to make the correction is exclusively equitable. (3 *Greenleaf Ev.* sections 360, 363; 1 *Maddock's Chancery*, 48; 1 *Story's Eq.* section 166.)

No case can be found where parol evidence has been admitted to prove that a conveyance which

purports to be made by A, was in fact made by B. A corporation is but an artificial person, and the same rule applies. If such a rule of evidence be admitted, the titles to real estate will be at the mercy of parol proof, and no titles would be safe.

It is said in *Greenleaf's Ev. supra:* "In regard to the effect of parol evidence to control the effect of a writing, we have already seen that the rule, subject to the modifications which were stated under it," (referring to vol. 1, section 275 to 305,) "is inflexible, that extrinsic verbal evidence *is not admissible at law to contradict* a written instrument." Mistakes in written agreements must be corrected by courts of equity, by proceeding instituted for that purpose, and not in a trial in a court of law, where the instrument is offered as evidence. Such instruments can only be corrected by courts of equity.

2. But if the court shall not concur in this view, then it is insisted that the trustees of the Kentucky Seminary had no authority to sell more than one-eighth of their land. The authority to alienate was given by the act of 1814, and that for the purpose of vesting the proceeds in the bank stock of the Bank of Kentucky. The Bank referred to was the old Bank of Kentucky, not the present Bank, which was not chartered until 1834. (1 *Stat. Law*, 200.) The charter of the Bank of Kentucky, which existed in 1814, expired in 1821; and in 1832, when the deed was made was not in existence as a business institution.

It was not intended that the lands granted to institutions of learning, should be sold and the proceeds expended in the current expenses of the institutions, but that the principal, at least, should remain a permanent fund. In authorizing the sale of those lands and the investiture of the proceeds in stock of the Bank of Kentucky, the original purpose was adhered to; but in 1832 the money could not be so invested as to yield a dividend, and this fact was made known to the vendee, Sharp. It was a part of the history of the State, which the court knows judicially. It

is therefore contended that as there was no bank stock in existence in which to invest the proceeds according to the act of the Legislature, there was no power or right existing to make a sale in 1832. The power to sell was special and limited.

3. The act of 1800 and that of 1814 must be taken together, and so construing them, it is necessary that the party claiming under a deed from the trustees, must show that the sale was made by authority, and that two-thirds of the trustees concurred in the sale.

I conclude upon the whole case : 1. That the plaintiff showed title and right of recovery. 2. That the defendant gave no legal evidence to defeat a recovery. 3. That the court erred in not granting a new trial.

*Robert McKee*, for appellee—

Two grounds are relied upon for the reversal of the judgment in this case. 1. The admission of the deed purporting to be from the trustees of the Kentucky Academy to Fidello C. Sharp, as conveying the lands in contest. 2. That the deed does not cover the lands sued for.

1. Is the deed purporting to be the deed of the Kentucky Academy, the deed of the plaintiff, and does it convey the land ? No one who examines the deed can doubt that it is the deed of the plaintiff. The seal affixed bears the corporate name of plaintiffs, and their locality, Frankfort. That it is their deed in contemplation of law, is clearly manifest.

From the days of Lord Coke it has been settled that a variation in the corporate name, in a grant by the corporation, or to it, is immaterial, if the true name can be collected from the instrument, or shown by proper averments and proof. (*Angel & Ames on Corp.* 206–8, *section* 6, *and authorities there cited;* 2 *Kent's Com.* 292 ; 1 *Monroe* 177.)

In this case the identity of the plaintiffs with the grantors in the deed is "apparent in proof," which, in this form of action, is all that is required. The name

of a corporation is descriptive, as well as intended to distinguish it from other corporations; and if the name used in the grant distinguishes the institution from all others, so that there can be no mistake as to the institution making the grant, the deed is good. In this case, the name used in the grant is "Kentucky Academy." The corporate name of plaintiffs is "Kentucky Seminary." The Kentucky Seminary is located in Frankfort, or Franklin county, and the land surveyed for Franklin county. The deed conveyed land surveyed for the Justices of Franklin County Court. At the date of the deed, in April, 1832, there was no corporate institution in existence bearing the corporate name of "Kentucky Academy," nor had any institution that name, unless the plaintiffs acquired it by reputation.

Again : the word "Academy" is commonly regarded as synonymous with "Seminary;" and, though the words are different derivatives, yet they are commonly treated as synonymous; and it is well settled, that if there be only a slight variation in the words of the corporate name, yet if enough be said to show that there is such an artificial being, and to distinguish it from all others, the corporation will be regarded as well named; or if the corporation be named by terms synonymous, it is sufficient, and a mere transposition, interpolation, or omission, or alteration of some of the words, makes no essential difference. (*Angel & Ames on Corp.* 77–8, *and note and authorities cited; Bacon's Ab. Title Corp. letter C, section* 2; 1 *Monroe*, 177.) A corporation is known by its seal— it acts by it, and grants by it. (*Black. Com.* 475.) A mistake in the name, if the seal be attached, is wholly immaterial. (6 *Taunton,* 467, *and authorities cited.*)

In this case, the authority to affix the seal has been questioned. The law presumes that an officer does not exceed his authority. and that he has authority to affix the seal when the seal is proved, and the contrary must be shown by the party objecting. (*Daniel vs. Dickens,* 4 *Yerger's Tenn. Rep.* 7; *Angel & Ames*

on *Corp.* 193-4.) And even though paper and wafer, stamped with a common desk seal of a merchant, be used, it will, upon proof of the signature of the agent executing the instrument in behalf of the corporation, be presumed to be intended as the seal of the corporation, until the presumption is rebutted by competent evidence. (*Angel & Ames on Corp.* 195-6.) And the like presumption of authority in the agent, and that the authority was not exceeded, will arise.

The case at bar is clearly within the rules laid down.

3. The party notified to take depositions resided in Frankfort, where the deposition was to have been taken. It is true, that by an agreement of record, notice to the attorney was good; but the attorney was not the party. He may have travelled to Frankfort, but there is no proof that the party had to travel any distance whatever. An affirmance is asked.

December 8.      Judge Simpson delivered the opinion of the Court—

It does not appear from the bills of exception that any [Judge Stites did not sit in this case.] objection was made upon the trial to any of the evidence introduced by the defendant, except to the deed made by John H. Hanna, as chairman of the Kentucky Academy, to Sharp. The propriety of the decision of the court in refusing to exclude this deed, is the only question to be considered, in determining whether the court erred in overruling the plaintiffs' motion for a new trial. No instructions seem to have been given by the court; and as the evidence, if the deed referred to was sufficient to pass the plaintiffs' title to the land embraced in it, authorized the verdict, the judgment in favor of the defendant was correct.

1. A variation from the precise name of a corporation, where the true name can be collected from the instrument, or is shown by proper averments, will not vitiate a      The doctrine seems to be well settled, that a variation from the precise name of the corporation, when the true name can be collected from the instrument, or is shown by proper averments, will not invalidate a grant by or to a corporation. (*Kent's Com.* 92. *Pendleton vs. Bank of Kentucky,* 1 *Mon.* 177.) Under this doctrine it has been held, that a devise to

the inhabitants of the *South* Parish, may be enjoyed by the inhabitants of the First Parish. (3 *Pick. Rep.* 232.) And a grant by John, abbot of N, by the name of William, abbot of N, was held valid. (6 *Rep.*, 65; *Angel & Ames on Corporations*, 55.) So, if the name of a corporation be expressed by words synonymous, it is sufficient. If J S, abbot of B, make a lease by the name of J S, clerk of B, it is good. (*Bacon's Abridgement*, 2 vol. *Title Corporations*, page 5.)

In this case, the corporate name of the grantor was the Kentucky Seminary. The deed was made in the name of the Kentucky Academy. It was executed by the chairman of the board of trustees of the Kentucky Seminary at Frankfort, under the seal of the the corporation. There was no such corporation in existence as the Kentucky Academy at the time the deed was executed. It is obvious, therefore, that this variation in the name of the corporation would not create the impression that the deed had been executed by any other corporation than the one by which it was executed. The words academy and seminary are now generally regarded as synonymous. Whether they are so, according to their true and original signification, is not important, if such be their meaning according to their usual and common acceptation. It is clearly shown that the deed in question was executed by the Kentucky Seminary, and we are of the opinion that the variation which exists in the corporate name, is insufficient to invalidate the conveyance, at least so far as the corporation itself is concerned.

We are also of the opinion that the corporation had authority at the time the deed was executed to sell and convey the land embraced by it. The court, therefore, did not err in refusing to exclude the deed as evidence. Wherefore, the judgment is affirmed.

But during the pendency of the action, a judgment was rendered by the court upon an incidental question, which is complained of in the assignment of errors.

---

**Margin headnotes:**

KY. SEMINARY
*vs.*
WALLACE.

grant by a corporation. (2 Kent's Com. 92; Pendleton v. Bank of Kentucky, 1 Monroe, 177; analagous is 3 Pick. 232; Angel and Ames on Corp., 55; Bacon's Ab. Tit. Corp. 5.)

2. The corporate name in this case was *Kentucky Seminary;* the deed was made by the name of *Kentucky Academy*, executed by the President of the *Kentucky Seminary*, with the seal of the corporation, when there was no such corporation existing in Kentucky as the Kentucky Academy. Held, that the deed was properly admitted to go to the jury to show title in the grantee, and that the corporation had power to sell. Seminary and Academy are generally regarded as synonymous.

3. Where the attorney of a party is notified to attend to take

depositions, and does attend, and the deposition is not taken, without good reason for the failure, the party failing is subject to the judgment for mileage, &c., though the client of the attorney, or one of them, resided at the place of taking the deposition.

By the agreement of the parties, a notice to take depositions was good against the lessors of the plaintiff, if served upon their attorney, who resided in Hopkinsville. The plaintiffs' attorney having been notified that a deposition would be taken by the defendant in Frankfort, on a specified day, attended agreeably to the notice, and the defendant having failed to take the deposition, the plaintiff moved for a judgment against him for mileage, according to the provisions of the statute upon the subject. The motion was overruled, upon the ground that as some of the lessors of the plaintiff resided in Frankfort, the attendance of their attorney from Hopkinsville was unnecessary. But as he was the person to be notified, and upon whom the plaintiffs relied to attend to the preparation of their case, and he did attend, under the belief that the deposition would be taken, we think the court erred in overruling the motion, and that the plaintiffs were entitled to a judgment for the amount prescribed by the statute.

Wherefore, the judgment overruling the motion is reversed, and cause remanded that a judgment may be rendered for the plaintiffs. But, as only a very small part of the record relates to the proceedings in this motion, and it is distinct and separate from the balance of the record, the plaintiffs in error will be entitled only to so much of the costs in this court, as would have accrued if the proceedings on the motion had been alone copied in the record, excluding an attorney's fee.